UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE FUNCHES, | No. 2:12-cv-1136 AC |
| Petitioner, | |
| v. | ORDER |
| MICHAEL D. MCDONALD, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the magistrate judge. ECF No. 6, 8, 18. Petitioner was convicted of two counts of robbery and assault with a firearm. I C.T. at 47-51.1.[1] In a bifurcated proceeding the jury also found true sentencing enhancements for committing the offenses for the benefit of a criminal street gang and for firearms use. Id. The petition presents two claims challenging the gang enhancement and the imposition of a separate sentence for assault with a firearm. ECF No. 1 at 21, 22. Respondent has answered. ECF No. 11, 12. Petitioner has not filed a traverse. For the reasons that follow, the petition is denied.

////

---

[1] "C.T." refers to the Clerk's Transcripts lodged by the respondent in the instant case. The number preceding "C.T." refers to the volume.

1

I.    Background

    a.  Trial on the Substantive Offenses

Petitioner was tried together with his co-defendant, Nathaniel Poplar. The offenses occurred on April 12, 2008 when Keyshawn Hutchinson and his ex-girlfriend, Glenda Fletcher, entered the gated apartment complex where Hutchinson's mother lived. II R.T. at 360, III R.T. at 708-10.[2] As Hutchinson unlocked the pedestrian gate, Nathaniel Poplar and petitioner approached them. II R.T. at 374. Poplar produced a gun and said, "My kids got to eat and I want everything." Id. at 375, 378. Poplar cocked the gun and pointed it at Hutchinson's face. Id. at 378-79. Petitioner stood behind Poplar. Id. at 378-79.

Hutchinson began emptying his pockets and threw his wallet, keys, cash, and cell phone on the ground in front of him. II R.T. at 379-81. Fletcher held a purse, which petitioner took from her arm. Id. at 389-90. Poplar repeated that he wanted "everything," including Hutchinson's shoes and socks. Id. at 382. Poplar told Fletcher to strip, but she said, "No." III R.T. at 721, 723.

As Hutchinson began removing his shoes and jeans, Poplar said, "I'm G Parkway Mobb. I want everything. My kids got to eat." II R.T. at 382-83. Hutchinson understood "G Parkway Mobb" to be a "well known gang." Id. at 383.

As Hutchinson removed his shirt, Poplar attempted to pistol whip him, but Hutchinson saw the gun out of the corner of his eye. II R.T. at 384-85. Hutchinson ducked and the gun nicked him in the back of the head. Id. at 385.

Poplar and petitioner collected the items from the ground and returned to their car. II R.T. at 387, 390. Fletcher reported the crime to the police later that evening. III R.T. at 727.

    b.  Trial on the Gang Enhancement

Following the jury's finding of guilt, Detective Justin Saario of the Sacramento Police Department testified as the prosecution's gang expert. V R.T. at 1276. According to Saario, G Parkway Mobb is a criminal street gang. Id. at 1292. Saario's opinion was based on his training

---

[2] "R.T." refers to the reporter's transcripts filed by respondent. The number preceding "R.T." refers to the specific volume.

2

1  and experience, his contact with gang members, and conversations with other gang experts. Id.
2  The primary activities of G Parkway Mobb include assaults with deadly weapons, burglaries,
3  robberies, and possession of firearms. Id. at 1309.

4  In Saario's opinion, petitioner is a member of G Parkway Mobb.[3] V R.T. at 1320. Saario
5  based his opinion on petitioner's admission to being a gang member, a video clip depicting
6  petitioner involved in gang-related activity, a photograph of petitioner making a G Parkway
7  Mobb gang sign with both hands, his recorded phone conversations in jail, three police reports
8  describing petitioner's behavior, and petitioner's involvement in the current crimes. Id. at 1320-
9  22, 1327-28, 1331-32. Saario testified that Poplar is also a member of G Parkway Mobb. Id. at
10 1345.

11 In response to a hypothetical question describing the current crimes, Saario opined that the
12 crimes were committed in association with or for the benefit of the gang. V R.T. at 1357. With
13 respect to Poplar, Saario opined that his actions were gang-related because Poplar announced the
14 gang name and "[took] it to that next level" by pistol whipping Hutchinson and forcing him to
15 remove his clothes. Id. at 1356-58. These actions show disrespect to the victim and enhance the
16 reputation of the gang by instilling fear in the community, leading to a "forced respect" for the
17 gang. Id. With respect to petitioner, Saario opined that petitioner committed the crimes for the
18 benefit of or in association with the gang because he worked in concert with Poplar to commit the
19 crimes by collecting the property and clothes from Hutchinson. Id. at 1357-58.

20 On July 29, 2009, the jury found the gun and gang enhancements to be true. I C.T. at 50-
21 51.1

22 On September 10, 2009, petitioner was sentenced to an aggregate term of thirteen years in
23 state prison. VI R.T. at 1619-20.

24 Petitioner timely appealed, and the California Court of Appeal for the Third Appellate
25 District affirmed the convictions in an unpublished opinion dated November 3, 2010. ECF No.
26 12 at 2. Petitioner's timely appeal for review was denied by the California Supreme Court on

---

[3] Petitioner was validated as a member of G Parkway Mobb in 2006. Lodged Doc. No. 15 at 1320.

3

March 16, 2011.  Lodged Doc. No. 6.  Petitioner did not seek collateral review in the state courts.  The instant federal habeas petition was filed on April 27, 2012.  ECF No. 1.  It includes the two issues raised and exhausted on direct appeal.  ECF No. 1 at 21-22, Lodged Doc. No. 2 at 15, 24.  Respondent answered these claims on the merits, asserting no procedural defenses.  *See* ECF No. 11, 12.

## II.   Claim One: Admission of Gang Expert Testimony

### a.   Factual and Procedural Background

On federal habeas, petitioner challenges the admission of Detective Saario's expert testimony regarding three police reports to support the gang enhancements charged under Cal. Penal Code § 186.22(b).  ECF No. 1 at 16.  Specifically, petitioner alleges that admission of this "unreliable hearsay" evidence rendered his trial fundamentally unfair, in violation of his constitutional due process rights.  ECF No. 1 at 16, 21-22.

In the bifurcated trial on the gang enhancements, Detective Saario testified *inter alia* about three police reports which contributed to his opinion that petitioner is a member of G Parkway Mobb.  Lodged Doc No. 15 at 1331.  The three challenged reports are described below.

The first report from April 12, 2006 described a man who was walking down the street when he was approached by five to six juveniles with dreadlocks.  Lodged Doc. No. 15 at 1331.  The youths asked the man for change for a five dollar bill, which he gave them.  Id.  When he tried to retrieve his money, they threw him to the ground and punched and kicked him.  Id.  Petitioner was later identified as one of these individuals.  Id.  The officers went to petitioner's house and found Poplar hiding in the closet.  Id. at 1331-32.  The court sustained a juvenile petition against petitioner for grand theft.  Id. at 1332.  Saario testified that this report was significant because it shows petitioner in association with Poplar, "committing another robbery of similar circumstances, multiple subjects."  Id.

According to the October 23, 2006 report, petitioner, Poplar, and validated G Parkway Mobb member Vigel Patterson went to a liquor store.  Lodged Doc. 15 at 1335.  Petitioner and another individual exited the store, while Poplar and Patterson remained inside.  Id.  When a store employee asked Poplar to leave, Poplar picked up some alcohol, struggled with the employee, and

fled with the alcohol. Id. Poplar and Patterson were arrested for robbery. Id. Petitioner was not arrested. Id. at 1336. Saario testified that this report was significant to his opinion that petitioner is a member of G Parkway Mobb because it shows him in association with two other gang members. Id.

According to the October 25, 2006 report, a team of officers went to petitioner's house to conduct a probation search. Lodged Doc. No. 15 at 1337. When they arrived, Poplar and Patterson were leaving petitioner's house. Poplar and Patterson took off running and Patterson discarded a sandwich bag of marijuana. Id. at 1338-39. A search of petitioner's residence revealed 21 dime bags of marijuana and an electronic scale inside petitioner's room, which Saario testified is consistent with marijuana sales. Id. at 1338-40. Petitioner was convicted of misdemeanor possession of marijuana. Id. at 1340. This report was significant to Saario's opinion because it shows petitioner and Poplar with validated gang member Patterson, and possession of marijuana for sale is a common activity of G Parkway Mobb. Id. at 1339-40.

      b.   Standard of Review on Federal Habeas

Based on 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for writ of habeas corpus cannot be granted for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or the decision was based on an unreasonable determination of the facts." (2011). The state court's rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Harrington v. Richter, 131 S. Ct. 770, 784-785 (2011) (citing Harris v. Reed, 489 U.S. 255, 265 (1989)). This presumption can be rebutted "when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

This court must first determine whether the last reasoned state court opinion actually adjudicated the federal constitutional claim "on the merits." On direct appeal, the state court found that the admission of Detective Saario's testimony regarding the two October 2006 police reports was not error under state rules of evidence. ECF No. 12 at 8-10. It found that the

1  admission of Saario's testimony regarding the April 12, 2006 report was error, but found any such
2  error harmless under the state standard for determining prejudice, People v. Watson, 46 Cal.2d
3  818, 836 (1956). ECF No. 12 at 7-8. The court did not apply the harmless error standard
4  applicable to federal constitutional violations. See Chapman v. California, 386 U.S. 18, 24
5  (1967). Thus, even applying the rebuttable presumption that the constitutional claim was
6  "adjudicated on the merits" for purposes of 28 U.S.C. § 2254(d), in this case that presumption is
7  rebutted. See Harrington v. Richter, 131 S. Ct. 770, 784; Johnson v. Williams, 133 S. Ct. 1088
8  (2013) (holding that "[w]hen a state court rejects a claim without expressly addressing that claim,
9  a federal court must presume that the claim was adjudicated on the merits—but that presumption
10 can in some limited circumstances be rebutted.").

11  Since the state court did not adjudicate the constitutional claim on the merits, this court
12 applies a de novo standard of review. See Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.
13 2006). However, even application of this more generous standard does not lead to any relief for
14 petitioner.

15        c.  Harmless Error

16  The court assumes without deciding that admission of Detective Saario's testimony
17 regarding the three police reports amounted to a constitutional violation, but finds this error was
18 harmless. On federal habeas corpus review, the standard for harmless error is whether the error
19 "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v.
20 Abrahamson, 507 U.S. 619, 638 (1993); see also Lilly v. Virginia, 527 U.S. 116, 139-40 (1999)
21 (harmless error analysis applies to erroneous admission of hearsay statements). Thus, to prevail
22 on this claim, petitioner must demonstrate that Saario's testimony regarding the police reports had
23 a substantial and injurious effect on the jury's finding that the gang enhancement was true.

24  To find the gang enhancement true, the jury had to find (among other things) that
25 petitioner was a member of G Parkway Mobb and that his crimes were committed in association
26 with or for the benefit of the gang. Cal. Penal Code § 186.22(b). There is no argument on these
27 facts that the admission of the police report testimony had a substantial and injurious effect on the
28 jury's finding that petitioner was a member of G Parkway Mobb. Detective Saario's opinion that

petitioner was a gang member was not based on the police reports alone. Rather, Saario considered petitioner's self-admission, the video depicting petitioner's association with other G Parkway Mobb gang members,[4] the photograph of petitioner making a gang hand sign, the phone calls from the jail,[5] the three police reports, and the facts of the current case. Lodged Doc. No. 15 at 1320-22, 1325, 1331-32, 1335-36, 1337, 1339-40. Importantly, Saario testified that in forming an opinion that a person is a gang member, "I don't take anything individually. I kind of have to take a very broad look at everything and form [my] opinion – or form my opinion based on everything." Id. at 1347, 1416-1417. With respect to the reports, "[e]ach report was merely one factor of many" that made up his determination regarding gang membership. Id. at 1411. In light of extent and the independent probative strength of the other evidence, there is no reason to think the admission of the police report testimony had any substantial effect on the jury's finding that petitioner was a member of the G Parkway Mobb.

Nor did the police report testimony have any substantial effect on the jury's finding that petitioner's crimes were committed in association with or for the benefit of G Parkway Mobb. Saario's opinion that the crimes were committed for the benefit of the gang was based primarily on a hypothetical question describing the facts of the current crime. Lodged Doc. No. 15 at 1356-58. Saario explained how the announcement of the gang's name and the display of disrespect to the victim instilled fear in the community, thereby enhancing the gang's reputation, which benefits the gang. Id. This evidence alone was sufficient to support the jury's finding that the crimes were committed in association with or for the benefit of G-Mobb and was not substantially affected by admission of the testimony regarding the police reports. In light of the strength of this evidence, it is unlikely that the testimony about the police reports had substantial effect on the

---

[4] Saario explained the significance of the video as follows: "[A]s he's walking out, she's saying, 'Tyrone, introduce yourself,' and he doesn't say, 'Hi, my name is Tyrone.' He throws up a G Parkway hand sign and says, 'G Parkway, baby.' And that basically is telling everybody who watches the video, who's there seeing him, that – what he's about, who he's associated with, who he's affiliated with." Lodged Doc. No. 15 at 1322. Another video clip also showed petitioner with known G Parkway Mobb members, saying "G Parkway, baby." Id. at 1323.

[5] In the recorded calls, petitioner talked about the presence of other G Parkway Mobb members and rival gang members who were housed in the jail at the time. Id. at 1327-31.

verdict.

To the extent petitioner argues that the police report testimony substantially affected the jury's verdict because it prejudicially depicted him as a "violent predator,"[6] petitioner's argument is unconvincing. The information contained in the reports did not involve a level of violence or predation that would be likely to inflame the passions of the jury. Accordingly, the alleged constitutional error did not have a substantial or injurious effect on the jury's finding that the gang enhancement was true, see Brecht, 507 U.S. at 623, and habeas relief is denied on this claim.

### III.     Claim Two: Sentencing Error

Petitioner alleges that the trial court violated California Penal Code Section 654 by imposing separate sentences for his robbery and assault convictions, thereby punishing him twice for a single act and violating his constitutional due process right to be free from excessive punishment. ECF No. 1 at 21-22. Petitioner's claim is, at its core, an alleged violation of a state sentencing law. However, violations of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). Accordingly, relief must be denied because this claim is not cognizable on federal habeas.

### IV.     Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either

---

[6] On direct appeal, petitioner's argument appears to have been that because there was already strong evidence that he was a member of G-Mobb, the testimony regarding the police reports was unnecessary and only minimally probative on this point, and should have been excluded. Lodged Doc. No. 2 at 17, 22-23. Petitioner argued that the weak point of the prosecution's case was whether the crimes were committed for the benefit of or in association with G-Mobb, and that the police report testimony was improperly used to show that petitioner "was a predator who committed violent offenses to benefit G-Mobb, and thus must have committed these robberies for the gang." Id.

issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R.App. P. 22(b). For the reasons set forth herein, petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability should issue.

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is denied; and

2. This court declines to issue a certificate of appealability.

DATED: September 9, 2014

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE